Good morning. Can you hear me all right? Yes. All right, very well. May it please the court, my name is Colin Stevens. I represent the appellant in this matter, Joseph Birdtail. The district court certified two questions for appeal and I raised a third uncertified question. At the outset, I would say it's largely self-evident that if trial counsel miscalculates the advisory guideline range in advising a defendant on whether to plead guilty or not, and that miscalculation is approximately 236 months off, I think that counsel's performance certainly satisfies the Strickland prong. When the defendant then relies... Oh, is that in no context whatsoever or is it just a matter of math? Because this case arises in a very serious context and you want to make it a math problem. I do and I don't mean to generalize. I think in this particular case that that miscalculation, given the facts that were available to trial counsel, the NCIC report and the guidelines, that that is definitely Strickland error under the first prong. Well then, why didn't the, after the guideline range was determined, there was no recommendation to withdraw the guilty plea? That is a question, your honor, that I cannot answer, which relates to my third, which relates to the uncertified question regarding the district court's denial of discovery or an evidentiary hearing. At this stage, the record before this court, I have, I cannot tell you what discussions occurred between Mr. Birdtail and sentencing counsel. Mr. Birdtail has no recollection? Mr. Birdtail would testify or present evidence that... Why didn't he just offer a declaration? He did. If the court looks at the excerpt of record, I think 4748 in that area, he supplied an affidavit to his initial pro se 2255 motion. Can we get a relation of events here? Let's take your position that it was deficient performance. The next prong of Strickland is prejudice. Correct. Mr. Birdtail, before the sentencing, was given the pre-sentence PSR. Correct. And it had the right calculation of the sentencing range. He knew that. He had an opportunity to withdraw his guilty plea. He had separate and different counsel from the one that committed the deficient performance, which you claimed, and he didn't withdraw his guilty plea. Now, how is that prejudicial? Well, Your Honor, if I could just, I don't want to split hairs with you, but I would say he didn't have the opportunity to withdraw his guilty plea. He had the opportunity to move to withdraw his guilty plea. So I don't think it would... The court had, you know, you got to put this in full context. The court had relieved the initial counsel, gave him new counsel, and new counsel told the court, we need to consider whether or not we need to file a motion to withdraw the plea. Correct. Under all the circumstances here, I don't think much of a showing would have been required. To withdraw the guilty plea. I agree, but there is literally no record about the discussion that occurred between... And it looked like nobody wanted him to withdraw his guilty plea because he would have gotten stuck with the reinstatement of the first count, which would have resulted, and he'd been convicted, he would have faced, what was it, 30 years? Mandatory minimum 30 years. 30 years, that's correct. I mean, which is, you know, a significant amount of additional time. How can a reasonable defense attorney let his client go before a jury when he sexually How can he let... How can a good defense lawyer let his client go to trial looking at a 30-year mandatory minimum? And, of course, the other had a maximum of life, I think. I don't think there was any mandatory minimum. Correct. Both had maximums of life. And I will be honest, Your Honor, it would not be my favorite case to take to trial, but the reality of how the case shook out between the mandatory minimum on count one versus what the guideline range ended up to be, the difference in time, the difference in that amount of time for Mr. Birdtail, from his perspective, is negligible. The sentence that he ended up receiving in light of the plea agreement versus the sentence he would have ended up receiving under the mandatory minimum, from his perspective, was one that, what's a few extra years at my age, essentially? What was it? 243? I don't remember. He received a sentence of 264 months. 264? Correct. Versus 360? Correct. Okay. Well, I have motions for Rule 35 to reduce prisoners' terms. They're very happy to get 12 months off, and I think that any prisoner I've ever I certainly am not going to dispute that. I think what it comes down to, though, is what, from Mr. Birdtail's perspective, given his circumstances, his age, I mean, what he would testify to is, look, I'm going to probably die in prison under 264 months or 360 months. I would like the opportunity to take a shot, take a run at my motion to suppress, and if that is successful, my chances at trial increase significantly, because without that confession, his chances increase. And I'm certainly not commenting on the validity or the inevitable success of a motion to suppress, but he gave up that motion. He gave up his right to trial to confront the witnesses, based solely on this pie-in-the-sky estimate that his trial counsel gave. No, because the pie-in-the-sky estimate was no longer on the table at the sentencing. He knew what the PSR was. Correct, and once he proceeded with sentencing counsel, he inexplicably, and I, again, he went before the district court judge and said, I'm consigned to losing 19 years of my life. Sentencing counsel said, Your Honor, we've spoken. He doesn't want to withdraw his guilty plea, and we ask for a low end of the guideline sentence. I have no idea why counsel didn't ask for a variance. I don't know what communications occurred between sentencing counsel and Mr. Birdtail. There's the, I think, the misguided reliance on the Elaine case. I don't understand how any reasonable counsel could have advised Mr. Birdtail that you have a shot at lowering your guideline range based on this, based on Elaine. So, again, I think that's the prejudice in this case for both trial counsel and sentencing counsel, and even if we remove the Strickland error that occurred in trial counsel's case, this court and the district court had, didn't have, doesn't have the information and didn't have the information to decide this 2255, and again, I believe the district court abused its discretion in not granting discovery. When the district court appointed counsel, it said, based on the record, I cannot make this decision. Based on the reason why the new counsel that took over the case before sentencing, I just don't understand why he couldn't have offered an opportunity to withdraw. I, I, I, I, I don't know the answer to that, Your Honor, because there was, I wasn't allowed to ask him. With your permission, I'll reserve the remainder of my time. Okay. Thank you. Good morning, Your Honors. May it please the Court. My name is Jessica Bentley, and I represent the United States in this matter. I would like to go first to the advisory guideline calculation that was just discussed. As the Court has before it, Mr. Birdtail pled guilty to the lesser offense here, count two, that did not carry the mandatory minimum term of imprisonment here. And so following his guilty plea to count two, he received his pre-sentence report. And he realized at that point, as he indicated to the district court, that his guideline range was much higher than he had expected. At the ex parte hearing that he had in his request for new counsel, he told the district court, I thought I was going to get 40 to 50 months. What came back in his PSR was the fact that he faced approximately 17 to 18 years higher, 235 to 293 months. That was a surprise to Mr. Birdtail. What I'd like to emphasize, though, is that does not mean that his counsel was deficient, first of all, in the first prong to the Strickland and Hill analysis here. A mere inaccurate sentencing prediction standing alone does not constitute ineffective assistance of counsel. And the circuit has repeatedly recognized that in Womack v. Del Papa, IA v. Sun, and United States v. Manzo clearly emphasize that what does constitute deficient performance is if you have a gross mischaracterization of the likely outcome of the case. Wouldn't that be a gross mischaracterization? That's a significant amount of time in my book. I agree, Your Honor. We do have a gross mischaracterization of the predicted outcome of the case here. Counsel did get that wrong by 17 to 18 years. Let me ask you this. You know, sometimes at the plea stage, there's some discussion about, you know, what's the possible sentencing guideline range and what really are we looking at here? There was nothing like that? That did happen. That is correct, Your Honor. At the change of plea hearing that is contained in the government supplemental of excerpts record from page 1 to 27, what you'll see there is a very thorough Rule 11 colloquy that the magistrate judge that actually conducted this change of plea hearing went over with Mr. Birdtail that no one has made you any promises of the sentence you were going to receive. That by the indictment, you face a maximum penalty of life imprisonment on both of these charges, and no one decides what you were going to receive except the sentencing judge. That that is ultimately left to the discretion of the judge. And so going back to that deficient performance and the prejudice regarding the advisory guideline calculation, Mr. Birdtail was very adequately advised of his maximum penalties. But the gross mischaracterization alone is not enough to establish deficient performance. It has to be combined with the erroneous advice of the possible effects of going to trial. And that's what I want to emphasize here is that all we have here is a gross mischaracterization, that Mr. Birdtail never alleges that he received erroneous advice on the possible effects of going to trial. In any event, even if you were to determine that there was deficient performance, which the government here does not agree with, that he suffered no prejudice because he was advised of the very harsh nature of the penalties here. And the district court, when Mr. Birdtail, after his change of plea, when he received his PSR, and then going into sentencing, when he realized, wait, this is so much higher than I thought it was going to be, the district court really put the brakes on and conducted this ex parte hearing and had a very candid conversation with Mr. Birdtail and said to him, look, what are you telling me here? Mr. Birdtail said, I thought my guideline range was 40 to 50 months. Now it's this. I'm very unhappy with my counsel. And the district court took a lot of time to say, you face a maximum penalty of life. No one, and the district court specifically said to Mr. Birdtail, did your counsel promise you this? That you were going to receive a sentence of 40 to 50 months approximately? And Mr. Birdtail replied, no. No one has promised me this. This was just the estimate. And the district court again said, I could sentence you to life imprisonment here. This is what both charges potentially face. And so the district court, in giving Mr. Birdtail that opportunity, really cured any potential prejudice there. He was sufficiently advised of the harsh penalties. And the district court very reasonably took an abundance of caution, paused the hearings, and then gave him new counsel. And what is also notable there is that at that point, the sentencing hearing was continued out three months. Mr. Birdtail immediately received new counsel at that time. And the counsel, by the record in front of us, discussed all of these options with Mr. Birdtail. At that time, he even filed an additional motion to continue the sentencing for another month on the basis of whether to decide, whether to file a motion to. That's right. So by the record, it shows a great amount of thought on the second counsel's part. And that Mr. Birdtail, as this court noted, he was advised of the guideline range there. Obviously had a conversation with his counsel about the potential to withdraw a guilty plea and still proceeded to sentencing. And what I'd like to touch on briefly about the sentencing hearing is again, the second counsel went before the court and wanted to make the record clear. That second counsel told the court, I'd like to lay some record. Now, Mr. Birdtail was previously represented by counsel. And he had an issue with his previous counsel about the potential guideline range, about potentially filing a motion to withdraw his guilty plea. And I've discussed this with Mr. Birdtail, what his second counsel said. And then notably, he said to the court, I've had an opportunity to meet with Mr. Birdtail. I've discussed the issues with him. I've gone over his PSR. I've gone over his plea agreement, the evidence, the offer of proof. And your honor, this is an expert of record 62, said Mr. Birdtail has told me he does not wish to withdraw his plea. That he does wish to proceed to sentencing today. I'm going to persist in these objections, but he wants to go forward. There is no more emphatic statement than that. And Mr. Birdtail stood next to his counsel and proceeded. And so in regards to the advisory guideline range, there is no prejudice. There's no deficiency and there is no prejudice there. Briefly, to go into the next point, the motion to withdraw his guilty plea. Again, Mr. Birdtail cannot establish prejudice there because counsel did what any reasonable counsel would do in regards to the claims and the charges that Mr. Birdtail faced. Negotiated an advantageous plea agreement and he proceeded on that. And again, he cannot show prejudice there. And lastly, in regards to the evidentiary hearing, the discovery was abundant. The record was clear here and no discovery was necessary because the record provided an adequate basis for which the district court to resolve the claims. And I would like to note that this case- Was he represented by counsel on the 2255 at some point? Yes, your honor. And did that counsel ever suggest getting an affidavit or declaration from the original counsel? Yes. In the 2255, the amended 2255 that was filed by counsel today, he did ask for discovery. Did ask to, I believe, depose previous counsel or at least get statements of some sort from previous counsel of what was discussed. The district court though, I'd like to emphasize, did not abuse its discretion in not conducting additional discovery or holding an evidentiary hearing. There's nothing to prevent from at least going to the prior counsel and asking for a declaration? There's not, your honor. That is correct. Prior counsel could say, well, there's attorney-client privilege, but obviously that would, couldn't it? No, that was- It would be waived. That was within the district court's discretion of whether to do that here. Obviously, the district court did not do that. I would like to- Well, counsel could have done it. Counsel could have done that, but the district court had already ordered the response at that point. Mr. Burtale did file an affidavit in his pro se 2255, obviously not from counsel, but from him. Counsel requested it in the amended 2255 that was filed, but the district court decided on the record before it. I would like to close that in regards to the evidentiary hearing discovery, this case is very similar to the discovery that was available to the district court in Shaw versus United States that the government has cited. That there, the district court had the transcripts available to it. It had a letter, an affidavit from the defendant, the petitioner, and it made the findings based on that record alone. And that is okay here, that a judge, a district court may use its own recollections of the proceedings, may use its own notes, and can decide credibility. And so here, the district court was adequately apprised of all the facts and record and appropriately denied the discovery in the evidentiary hearing. Thank you. Thank you. I'll just backtrack and start with the discovery process. I was counsel for the amended 2255 and I did, I believe in both my amended petition and my reply, request discovery process. I spoke with both trial counsel and sentencing counsel. I mean, what they told me isn't before the court. I can certainly offer what they said, but from my perspective, discovery was warranted in the case based on what was said. And I think at minimum, especially for sentencing counsel, because if the court believes that the presence of sentencing counsel cures the prejudice that occurred with trial counsel, we have to hear from sentencing counsel about what was said. The government says that, you know, that sentencing counsel discussed these issues with Mr. Birdtail. What we don't know is how often they were discussed, whether the advice given to Mr. Birdtail about whether to withdraw his guilty plea was legally grounded. I understand what reasonable counsel would have advised the particular defendant in this case, but at the end of the day, the decision to go to trial or to plead guilty is a utilitarian calculus that's solely left to the defendant. Okay. Well, in the U.S. v. Keller Ninth Circuit case, it says erroneous predictions regarding a sentence are deficient only if they constitute gross mischaracterizations of the likely outcome of a plea bargain combined with erroneous advice on the probable effects of going to trial. And I haven't heard you say anything about the second category here, second element of that. And I guess, Your Honor, that goes to my uncertified question about discovery. I have no information about what trial counsel or sentencing counsel told Mr. Birdtail. All I have is Mr. Birdtail and all the district court had was Mr. Birdtail's affidavit in the 2255 proceedings and then what was said by sentencing counsel during the sentencing hearing. If there's nothing else. Thank you. Thank you, counsel. We appreciate your arguments in this matter and it's submitted at this time.
judges: Paez, Bea, Royal